STATE OF NORTH CAROLINA v. CLINTON BERRY THOMAS

No. 46

(Filed 29 December 1978)

1. **Witnesses § 1.2— competency to testify—age**
     There is no fixed age limit below which a witness is incompetent to testify; rather, the question in each case is whether the witness understands the obligations of the oath and has sufficient intelligence to give evidence.

**2. Witnesses § 1.2— competency of child**

The evidence on voir dire supported the determination of the court in a murder trial that a child who was five and one-half years of age at the time of the murder and six and one-half years of age at the time of the trial was competent to testify as a witness for the State.

**3. Homicide § 21.5— first degree murder — sufficiency of circumstantial evidence**

The State's evidence, though circumstantial, was sufficient for submission to the jury in a prosecution for first degree murder where it tended to show: the victim's mutilated body was found in her apartment; prior to the discovery of the body, defendant told a witness that he had killed a woman on the street where the victim lived and that the witness would read about it in tomorrow's paper; the victim's son saw a black man in his mother's apartment on the night of the crime wearing a light brown cap, a light brown coat and black pants; the child told the man his mother's pocketbook was on top of the refrigerator, and the pocketbook was found the next morning on the dining room table, and was smeared with blood; defendant came to a witness's residence at midnight that same evening wearing a brown cap, brown coat and black pants; defendant had blood on the front portions of his body; defendant burned his bloody shirt, put on a pair of the witness's pants, and left his black pants at the witness's residence; a tan cap, brown jacket, and a pair of pants belonging to the witness were seized from defendant's apartment the day after the crime; lab analysis of the cap, jacket and black pants indicated positive signs of blood on each item; blood taken from the pants was the same type as that of the victim; a fingerprint lifted from an ashtray in the victim's apartment matched defendant's fingerprint; and statements by the State's witness and by the victim's son shortly after the crime corroborated their testimony at trial.

Justice BRITT took no part in the considertion or decision of this case.

APPEAL by defendant from *McLelland, J.*, 27 February 1978 Regular Criminal Session, WAKE Superior Court.

Defendant was charged in a bill of indictment, proper in form, with the first degree murder of Linda Stroman Stancil. The State elected to try defendant for second degree murder and the jury returned a verdict of guilty of second degree murder. Defendant appeals from the judgment imposing a sentence of life imprisonment.

The State's evidence tends to show that at approximately 8:00 a.m. on the morning of 3 March 1977 Officer Michael R. Longmeirer of the Raleigh Police Department was summoned to the Shaw Apartments located on Dandridge Drive in southeast Raleigh to investigate a death in Apartment 805-C. When he arrived, the door was slightly open. As he entered the living room he saw the nude body of a black female lying on the floor in a

pool of blood. The couch and television were spotted with blood, and blood was spattered over one wall of the apartment. Blood-stained underwear was found on the couch and other articles of clothing were discovered on the floor near the body. To the left of the living room was a dining area containing a table and chairs. A pocketbook and a puzzle were lying on the table. Bloody foot-prints led from the table into the kitchen area. An autopsy disclosed 31 cut-type lacerations on the victim's head, neck and hands, inflicted by a knife-like instrument. It was determined that the victim's death was caused by a two and one-half inch deep wound to the left neck which severed the carotid artery.

Defendant offered no evidence. Other facts pertinent to decision of this case will be stated in our discussion of the assignments of error.

A prior trial of this case ended, on motion of defendant, in a mistrial due to the introduction of incompetent and prejudicial testimony by the State.

*Attorney General Rufus L. Edmisten by Assistant Attorney General Ben G. Irons, II, for the State.*

*Fred M. Morelock for defendant appellant.*

MOORE, Justice.

Eric Stancil, son of the deceased, who was about five and one-half years of age at the time of the murder and six and one-half years of age at trial, was allowed to testify as a witness for the State. Officer Donald Brinson was allowed to give cor-roborative testimony concerning a statement made by Eric to him on the day of the murder. Defendant assigns these as error.

When Eric was called as a witness defendant objected to his testifying because of his age. The trial judge excused the jury and conducted a *voir dire* hearing. The trial judge, the district attorney and defendant's attorney questioned Eric at length. In response to questions by the district attorney, Eric testified in part as follows:

"Q. What's your full name?

A. Eric Lee Stancil.

Q. Do you know who I am Eric?

. . . .

A. Narley Cashwell.

Q. We have talked before haven't we, sir?

A. Yes.

Q. Do you know, Eric, how old you are today?

A. Six.

Q. When is your birthday?

A. June 19th.

. . . .

Q. Where do you go to school?

A. Aldert Root.

Q. Aldert Root is located on the other side of town, isn't it?

A. Yes.

Q. What grade are you in, Eric?

A. First.

Q. Did you go to kindergarten?

A. Yes.

Q. Where did you go to kindergarten?

A. Aldert Root.

. . . .

Q. How do you get to school?

A. Bus.

. . . .

Q. Where do you live now?

A. 1201 South East, Apartment D.

. . . .

Q. Now Eric, who do you live with?

A. My grandma.

. . . .

Q. Who else lives with your grandmother besides yourself, Eric?

A. My uncle.

Q. Do you have any brothers or sisters?

A. I have one brother and one sister.

Q. What's your brother's name?

A. Marvin Makeese.

Q. How old is he?

A. One years old.

. . . .

Q. Eric, do you remember when you were living with your mother in the Shaw Apartments with Marvin?

A. Yes.

Q. And Eric, do you know where your mother is today?

A. Yes.

Q. Where is your mother today?

A. Up in heaven.

Q. Who else lives in heaven?

A. God.

Q. Does anybody else live with God?

A. Jesus.

Q. Now Eric, do you know what this book is right here I've got in my hand?

. . . .

A. A Bible.

Q. Do you know what's in a Bible?

. . . .

A. Stuff about God and Jesus.

. . . .

Q. Now Eric, do you know what it means to tell the truth?

A. Yes.

Q. Do you know what it means to tell a story or to tell a lie?

A. Yes.

Q. Do you know what happens to you if you tell a lie?

A. You get in trouble.

Q. Do you know who that gentleman is seated right next to you there in the black robe?

A. Yes.

Q. Do you know what his job is?

A. Yes, sir.

. . . .

Q. What do they call him?

A. "Judge."

Q. Do you know what kind of room you are in today?

A. The courtroom.

. . . .

Q. Has anybody talked to you about telling the truth?

A. Yes.

Q. Do you know whether or not you are supposed to tell the truth all the time?

A. Yes.

Q. Are you supposed to tell the truth all the time?

A. Yes.

Q. Do you think God would like it if you told a story?

A. No.

. . . .

Q. Now Eric, do you recall the morning when you got up and saw your mama lying hurt and you ran across the hall to Mrs. Pemrose Brewington's apartment?

A. Right.

Q. Do you remember where Marvin was?

A. No.

Q. Eric, do you remember coming home from school the day before you saw your mama hurt?

A. Yes.

Q. Do you remember seeing Mr. Finch, the gentleman who just came up here to testify, at your mama's apartment?

A. Yes.

Q. Do you recall your mama being okay at that time?

A. Yes.

Q. Now did you stay with your mama that day?

A. Yes."

At the conclusion of the *voir dire* hearing the trial judge ruled:

"COURT: I find that the witness Eric Lee Stancil is six and one-half years of age; that he attends first grade and attended kindergarten; that he is alert, composed, lucid; that he is cognizant of biblical concepts of God and of God's approval of truth and disapproval of falsehood; that his capacity to recall past events is normal for one of his age; and therefore, I conclude that he is a competent witness and will be allowed to testify."

[1] Children of various ages have been allowed to testify. There is no fixed age limit below which a witness is incompetent to testify. Rather, the question in each case is whether the witness

understands the obligations of the oath and has sufficient intelligence to give evidence. In *Wheeler v. United States*, 159 U.S. 523, 40 L.Ed. 244, 16 S.Ct. 93 (1895), a boy nearly five and one-half years of age was held competent to testify in a murder case; in *State v. Bowden*, 272 N.C. 481, 158 S.E. 2d 493 (1968), a six-year-old girl was held competent as a witness in a rape case; and in *McCurdy v. Ashley*, 259 N.C. 619, 131 S.E. 2d 321 (1963), a six-year-old boy was allowed to testify to events occurring nearly two years earlier. In *Artesani v. Gritton*, 252 N.C. 463, 113 S.E. 2d 895 (1960), it was held that a child's competency to testify is to be determined on the basis of his mental capacity at the time he is called upon to testify.

Our Court in many cases has quoted with approval from *Wheeler v. United States, supra*, as follows:

> "That the boy was not by reason of his youth, as a matter of law, absolutely disqualified as a witness, is clear. While no one would think of calling as a witness an infant only two or three years old, there is no precise age which determines the question of competency. This depends on the capacity and intelligence of the child, his appreciation of the difference between truth and falsehood, as well as of his duty to tell the former. The decision of this question rests primarily with the trial judge, who sees the proposed witness, notices his manner, his apparent possession or lack of intelligence, and may resort to any examination which will tend to disclose his capacity and intelligence as well as his understanding of the obligations of an oath. As many of these matters cannot be photographed into the record, the decision of the trial judge will not be disturbed on review unless from that which is preserved it is clear that it was erroneous. These rules have been settled by many decisions. . . ."

*See State v. Cox*, 280 N.C. 689, 187 S.E. 2d 1 (1972); *State v. Cooke*, 278 N.C. 288, 179 S.E. 2d 365 (1971); *McCurdy v. Ashley, supra*.

[2]  In present case there was ample evidence to support the trial judge's conclusion that Eric was "alert, composed, lucid" and knew the "concepts of God and of God's approval of truth and disapproval of falsehood." The judge observed Eric's demeanor during the *voir dire* hearing and his finding that Eric was compe-

tent to testify was supported by the evidence. The child said nothing after the judge's findings which would have required the trial judge to reverse his ruling. In fact, Eric's testimony regarding what he saw the night of the crime is wholly consistent with and almost identical to the testimony he gave on *voir dire*. The question of the witness's competency to testify rested in the sound discretion of the trial judge. *State v. Cox, supra; McCurdy v. Ashley, supra.* The record shows no abuse of discretion.

Since Eric was competent to testify as a witness, it follows that Officer Brinson's testimony concerning a statement made by Eric to him on the day of the murder, offered for the purpose of corroboration, was competent. *State v. Caddell*, 287 N.C. 266, 215 S.E. 2d 348 (1975); *Artesani v. Gritton, supra*; 1 Stansbury, North Carolina Evidence § 51 (Brandis rev. 1973). These assignments are overruled.

Defendant next argues that the trial judge erred in failing to grant defendant's motion for nonsuit. Defendant argues that if each parcel of the State's evidence is dealt with separately, none will prove sufficient to raise anything more than a suspicion of defendant's guilt.

A motion to nonsuit in a criminal case requires a consideration of the evidence in the light most favorable to the State, and the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom. *State v. McKinney*, 288 N.C. 113, 215 S.E. 2d 578 (1975). If there is substantial evidence — whether direct, circumstantial or both — to support a finding that the offense charged has been committed and that defendant committed it, a case for the jury is made and nonsuit should be denied. *State v. McKinney, supra; State v. Norggins*, 215 N.C. 220, 1 S.E. 2d 533 (1939). If the evidence presented is circumstantial, "the question for the court is whether a reasonable inference of defendant's guilt may be drawn from the circumstances. If so, it is for the jury to decide whether the facts, *taken singly or in combination*, satisfy them beyond a reasonable doubt that the defendant is actually guilty. . . ." (Emphasis added.) *State v. Rowland*, 263 N.C. 353, 139 S.E. 2d 661 (1965). *See State v. White*, 293 N.C. 91, 235 S.E. 2d 55 (1977). It is clear, therefore, that, in passing on a motion for nonsuit, evidence favorable to the State is to be considered as a whole in order to determine its suf-

ficiency. This is especially necessary in a case, such as ours, when the proof offered is circumstantial, for rarely will one bit of such evidence be sufficient, in itself, to point to a defendant's guilt. If a reasonable inference of defendant's guilt can be drawn from a combination of the circumstances, defendant's motion is properly denied. *Cf. State v. Rowland, supra.*

[3] The evidence in present case, taken as a whole and considered in the light most favorable to the State, is clearly sufficient to warrant a reasonable inference of defendant's guilt. On the early morning of 3 March 1977 the mutilated body of Linda Stancil was found in her apartment on Dandridge Drive. That very evening, prior to the discovery of the victim's body by police, the defendant told Luther Hines that he had killed a woman on Dandridge Drive, and that Hines would read about it in tomorrow's paper. The victim's son testified that on the night of the crime he saw a black man in his mother's apartment, and that the man was wearing a light brown cap, a light brown coat and black pants. The man came into the child's bedroom and cut on the light. In response to the man's question, the child told him that his mother's pocketbook was on top of the refrigerator. The pocketbook was found the next morning on the dining room table, and was smeared with blood. Luther Hines testified that defendant came to Hines' residence at midnight that same evening wearing a brown cap, a brown coat and black pants, and that defendant had blood on the front portions of his body. Defendant put on a pair of Hines' pants and left his black pants at Hines' apartment. The black pants were later recovered from Hines by police. A tan cap, a brown jacket, and the pair of jeans belonging to Hines were seized from defendant's apartment the day after the crime. Lab analyses of the seized cap and jacket and the black pants indicated positive signs of blood on each item. Blood taken from the pants proved to be of type A, the same as that of the victim. Hines testified that these items of clothing were those that defendant was wearing the night of the crime, and that he saw defendant burn his bloody shirt soon after he entered Hines' residence. A fingerprint lifted from an ashtray in the victim's apartment matched defendant's fingerprint. Finally, statements made by Luther Hines and Eric Stancil shortly after the crime corroborated their testimony at trial.

Though none of this evidence, taken separately, would be sufficient to raise more than a mere suspicion of defendant's guilt, it is clear that "[t]he chain of circumstantial evidence in this case was clearly sufficient to establish both the *corpus delicti* and that defendant was the perpetrator of the crime." *State v. Rowland, supra,* 263 N.C. at 358. It was therefore sufficient to overcome defendant's motion for nonsuit. This assignment is overruled.

Finally, defendant assigns as error the failure of the trial judge to allow his motion to set aside the verdict as being against the greater weight of the evidence. Such motion is addressed to the discretion of the trial judge, and the refusal to grant the motion is not reviewable on appeal. *State v. Vick,* 287 N.C. 37, 213 S.E. 2d 335 (1975); *State v. Davis,* 282 N.C. 107, 191 S.E. 2d 664 (1972); *State v. Henderson,* 276 N.C. 430, 173 S.E. 2d 291 (1970).

We have carefully examined the entire record, and in the trial, verdict and judgment we find no prejudicial error.

No error.

Justice BRITT took no part in the consideration or decision of this case.