STATE OF NORTH CAROLINA v. WAYNE THEODORE MERCER

No. 410A85

(Filed 3 June 1986)

1. **Criminal Law § 42.5— jewelry stolen from kidnapping and rape victim—admissible**

In a prosecution for rape, kidnapping, and felonious possession of stolen goods, a wedding ring and watch taken from the victim and admittedly found in defendant's possession after the offenses did not raise impermissible inferences because the stolen jewelry tended to make defendant's connection to the offenses more probable than without the evidence; a chain of custody for each item was introduced; the victim testified that she believed those items were the ones stolen from her; and the fact that defendant was in possession of the stolen jewelry soon after its theft had probative value on the issue of the identity of the perpetrator of the rape and kidnapping. N.C.G.S. 8C-1, Rules 401, 402, 403.

**2. Criminal Law § 106.2— rape, kidnapping, possession of stolen goods—circumstantial evidence—evidence sufficient**

In a prosecution for kidnapping, rape, and possession of stolen goods, the trial court properly determined that a reasonable inference of defendant's guilt could be drawn from the circumstances and denied defendant's motion to dismiss for insufficient evidence where the established facts which remain uncontroverted at trial were that a tall, thin black man in his twenties abducted the victim, stole her jewelry, and raped her; the defendant was a tall, thin black man in his twenties; the blood grouping reactions of semen stains were consistent with defendant and 14% of the general population; defendant was in possession of the victim's wedding band eight days after it was stolen; defendant was also in possession of the victim's stolen digital watch and gave it to his girlfriend prior to his incarceration fourteen days after the watch had been stolen; and the person who stole the victim's jewelry was the same person who kidnapped and raped her.

BEFORE *Winberry, J.*, at the 20 June 1985 Criminal Session of Superior Court, NASH County, defendant was convicted of first-degree rape, second-degree kidnapping, and felonious possession of stolen goods. Following a sentencing hearing conducted pursuant to N.C.G.S. § 15A-1334, defendant was sentenced to life imprisonment for the rape conviction and to presumptive terms of nine years and three years, respectively, for the second-degree kidnapping and the possession of stolen goods. Defendant appeals the imposition of the life sentence as a matter of right pursuant to N.C.G.S. § 7A-27(a). His motion to bypass the Court of Appeals on his appeal of the convictions for the kidnapping and possession charges was allowed 16 July 1985. Heard in the Supreme Court 17 April 1986.

*Lacy H. Thornburg, Attorney General, by Marilyn R. Mudge, Assistant Attorney General, for the State.*

*Robert D. Kornegay, Jr., and Howard A. Knox, Jr., for defendant-appellant.*

MEYER, Justice.

The evidence for the State tended to show that shortly after 7:00 p.m. on 3 January 1985, the victim, a 56-year-old female schoolteacher, drove the four blocks from her home in Rocky Mount to the Piggly-Wiggly grocery store. She parked her Honda automobile in front of the grocery store entrance, went inside, purchased a loaf of bread, and returned to her car. Once inside the car, the victim reached over to the left side door to close it

but was unable to do so because a man was standing beside the open door. The man held a small handgun to the left side of the victim's head and said, "Woman, I want your money."

The victim was unable to see the man's face because she was seated in the compact car, and the man, whom she described as "reasonably tall," was standing next to the car. The victim handed her assailant her change purse which contained only sixty cents, a small coin inscribed with biblical verses, and her house key. She explained to the man that she had no more money because she had come to the store only for a loaf of bread and had left her pocketbook at home. The man then ordered her to slip up the seat of the two-door Honda, and he slid easily into the back seat. As he entered the car, the man reached forward and knocked the rear view mirror askew. When he did, the victim noticed that the hand "belonged to a black person." The man ordered the victim not to look at him and to begin driving; she complied, and the man directed her to stop the car in the parking lot of the Rocky Mount Senior High School.

The man moved to the front seat of the car, pulled the victim's toboggan cap down over her face so that she could not see him, and engaged in vaginal intercourse with the victim against her will. The victim testified that her assailant held the handgun against her from time to time during the ordeal. While they were at the high school, the man ordered the victim to relinquish her rings and her watch. She gave him her engagement ring, her thin gold wedding band, and her digital Criterion watch. The assailant then had the victim drive him back to the Piggly-Wiggly store, where he got out of the car and left. The victim drove straight home, related the incident to her husband, then went to Nash General Hospital where Dr. Winters conducted an examination and prepared an SBI rape kit.

On 11 January 1985, the defendant appeared at the M&T Pawn Shop where Melvin Corbett was working. Mr. Corbett had known the defendant for four or five years. The defendant brought in a small, thin yellow gold wedding band for which Mr. Corbett paid him five dollars. Mr. Corbett tagged the ring, according to the store's policy, with an identification number and the date. He also completed a form for police records upon which he listed the seller's (defendant's) name, address, "North Carolina

I.D. number," date of birth, race, and sex. The defendant signed the form, a copy of which was filed with the police department.

On 15 January 1985, Detective Tommy Thompson of the Rocky Mount Police Department went to the pawn shop with the police department's copy of the pawn ticket and took custody of the fourteen carat gold wedding band defendant had pawned there four days earlier. He displayed the ring to the victim, who identified it as the one her attacker had stolen from her on 3 January. Detective Thompson arrested defendant pursuant to a warrant for possession of stolen goods issued and served on 17 January 1985. The defendant remained in jail until he made bond on the evening of 12 February 1985. The next day, 13 February, Detective Thompson arrested defendant pursuant to warrants for first-degree kidnapping and first-degree rape issued 12 February 1985.

Later in the day of 13 February, defendant's girlfriend, Laura Ann Winstead, spoke with Detective Thompson at his office in the police department. She was wearing a digital watch which she told Detective Thompson defendant had given to her some time before he was incarcerated on 17 January. Ms. Winstead relinquished the watch to Detective Thompson, who took it to the victim for possible identification the same day. The victim identified the watch as the one which had been stolen from her on 3 January. She noted that her watchband had originally been gold in color but that the gold coating had worn off from wear, leaving the band silver in color except where the clasp had covered it. When the victim tried on the watch, it was too small for her wrist. Detective Thompson adjusted the band so that the clasp covered the one-fourth inch yellow gold space. The watch then fit the victim.

David J. Spittle, SBI forensic chemist in the field of serology, compared body fluid samples of defendant and the victim. He concluded that the blood grouping reactions from the semen stains on the victim's underpants were consistent with those of the defendant and approximately fourteen percent of the general North Carolina population. The blood group type of defendant was consistent with reactions detected on the underpants and different from the victim's.

Detective Wayne Sears of the Rocky Mount Police Department testified at trial that he examined a latent fingerprint re-

moved from the rear-view mirror of the victim's car, but that the print did not have sufficient detail for comparison because the ridges were not distinct and could not be matched to any set of fingerprints. He sent the latent print to the SBI laboratory where Examiner Robert Duncan also concluded that the latent print was not of value for identification.

The defendant was convicted of first-degree rape, second-degree kidnapping, and felonious possession of stolen goods.

[1] Defendant first assigns as error the trial court's denial of his pretrial "motion to suppress" the introduction of the wedding ring and digital watch pursuant to N.C.G.S. §§ 15A-974 and -977.[1]

During the hearing upon defendant's motion, defense counsel stated as grounds for suppression that

> the most a jury could draw from the introduction of these items would be an inference that they in fact were the stolen items involved in this matter that were stolen from the prosecuting witness at the time of the sexual assault and at the time of the alleged kidnapping. From that inference there could only be another inference that in fact he was the assailant.

The trial judge denied defendant's motion in open court following a *voir dire* examination of the victim.

Defendant contends that, because the State's case was entirely circumstantial as to the identity of the perpetrator, admission into evidence of the watch and ring, both admittedly in defendant's possession after their theft, would prejudice the defendant because the jury would infer that defendant was the perpetrator of the sexual assault and kidnapping. We cannot quarrel with defendant's assessment of the purpose and intended effect of the introduction of the jewelry. Without doubt, the State intended that the evidence link the defendant with the offenses for which he was charged.

---

1. By his failure to comply with N.C.G.S. § 15A-977, the defendant has waived suppression of the evidence pursuant to N.C.G.S. § 15A-974, "Exclusion or suppression of unlawfully obtained evidence." *State v. Holloway,* 311 N.C. 573, 319 S.E. 2d 261 (1984). We therefore do not consider the allegations contained in his unverified written "motion to suppress" purportedly made pursuant to N.C.G.S. §§ 15A-974, -977, and consider only his oral pretrial motion to exclude "the admission and identification" of the jewelry.

The State contends that the very simplicity of the trial court's ruling on defendant's motion manifests its correctness. The ruling, in pertinent part, was:

The facts, based upon the evidence before me, appear to be . . . that [the victim] was the victim of a sexual assault and robbery on January 3, 1985; that certain property was taken from her including a wedding band and a digital watch; . . . that she believes State's Exhibit No. 1 to be the wedding band that was taken from her[;] and that she believes State's Exhibit No. 2 to be the watch that was taken from her. Based upon those findings of fact, the Court concludes as a matter of law that State's Exhibit No. 1 and State's Exhibit No. 2 are admissible into evidence, and that the motion to suppress is DENIED.

This Court has stated that

[t]he well established rule in a criminal case is that every object that is calculated to throw light on the supposed crime is relevant and admissible. *State v. Woods*, 286 N.C. 612, 213 S.E. 2d 214 (1975) [, *death sentence vacated*, 428 U.S. 903, 49 L.Ed. 2d 1208 (1976)]; *State v. Arnold*, 284 N.C. 41, 199 S.E. 2d 423 (1973); *State v. Hamilton*, 264 N.C. 277, 141 S.E. 2d 506 (1965), *cert. denied*, 384 U.S. 1020, 16 L.Ed. 2d 1044, 86 S.Ct. 1936 (1966); 1 Stansbury, N.C. Evidence § 118, p. 356 (Brandis Rev. 1973).

*State v. Hedrick*, 289 N.C. 232, 235, 221 S.E. 2d 350, 352 (1976). *See also State v. Wilson*, 313 N.C. 516, 330 S.E. 2d 450 (1985) (victim's wristwatch missing when his body discovered; defendant's girlfriend in possession of the watch two to three weeks after murder and armed robbery; defendant in possession of the watch one week later); *State v. Newman*, 308 N.C. 231, 302 S.E. 2d 174 (1983) (attacker took bag of groceries just purchased by victim; defendant caught holding the bag shortly after attack); *State v. Oliver*, 302 N.C. 28, 274 S.E. 2d 183 (1981) ("football candies" and "football candy wrappers" found in pocket of jacket located in truck used by defendants matched appearance of candy in store where murder took place); *State v. Young*, 16 N.C. App. 101, 191 S.E. 2d 369 (1972) (two rings stolen from victim by her attacker identified by victim at trial; State's witness properly allowed to testify that the defendant attempted to sell the rings to her).

Rule 402 of the North Carolina Rules of Evidence states a simple rule of admissibility:

Rule 402. Relevant evidence generally admissible; irrelevant evidence inadmissible.

All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of North Carolina, by Act of Congress, by Act of the General Assembly or by these rules. Evidence which is not relevant is not admissible.

N.C.G.S. § 8C-1, Rule 402 (Cum. Supp. 1985).

Rule 401 defines "relevant evidence":

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

N.C.G.S. § 8C-1, Rule 401 (Cum. Supp. 1985).

The watch and ring are "relevant" because they tend to make the existence of a fact of consequence — defendant's connection to the offenses with which he is charged — more probable than it would be without the evidence. Because defendant does not contend that the evidence is rendered inadmissible by any provision of the state or federal constitutions or by any other statute, the relevant evidence is admissible unless rendered inadmissible by the Rules of Evidence. N.C.G.S. § 8C-1, Rule 402.

Although defendant in his brief does not refer to Rule 403, his argument appears to be that the jewelry should have been excluded because its probative value is substantially outweighed by its prejudicial effect. Rule 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

N.C.G.S. § 8C-1, Rule 403 (Cum. Supp. 1985).

Rule 403 calls for a balancing of the proffered evidence's probative value against its prejudicial effect. Necessarily, evidence

which is probative in the State's case will have a prejudicial effect on the defendant; the question, then, is one of degree. The relevant evidence is properly admissible under Rule 402 *unless* the judge determines that it must be excluded, for instance, because of the risk of "*unfair* prejudice." *See* N.C.G.S. § 8C-1, Rule 403 (Commentary) (" 'Unfair prejudice' within its context means an *undue* tendency to suggest decision on an improper basis, commonly, though not necessarily, as an emotional one." (Emphasis added.)) Defendant contends that the jewelry should have been excluded because it was unduly prejudicial to him.

Initially, we note that the defendant was tried for three offenses: felonious possession of stolen property (the wedding band), first-degree rape, and first-degree kidnapping.[2] The prosecutor informed the court at the hearing on defendant's motion to exclude the jewelry that the State intended to consolidate all three cases for trial. The record contains no indication that the defendant made a motion to sever the offenses, and defendant does not argue on appeal that the offenses were improperly joined. The three offenses were properly joined for trial. N.C.G.S. § 15A-926(a), (c) (1983). We also note that the defendant failed to object at trial to the identification or introduction of the watch and ring and also failed to request a limiting instruction at any time.

The basis of defendant's motion to exclude the jewelry as unfairly prejudicial appears to be an argument that its introduction would permit the jury to draw two improper inferences. First, the jury would infer that the jewelry introduced at trial was, in fact, the jewelry stolen from the victim by her assailant. This contention is without merit. The State established a chain of custody for both items which were introduced, and the victim testified that she believed those items were the ones stolen from her on 3 January. She had previously identified both items as hers when exhibited to her by Detective Thompson when he recovered them. Therefore, introduction of the jewelry raises no *inference* that it was the jewelry stolen from the victim; her direct testimony, corroborated by Detective Thompson, was that it *was in fact* the jewelry stolen from her on 3 January.

2. The trial judge submitted second-degree kidnapping to the jury because the kidnapping indictment, 85CRS1401, was insufficient to support first-degree kidnapping, but was sufficient to support second-degree kidnapping.

Second, defendant contends that from the first "inference" (jewelry at trial was same jewelry stolen in January), the jury would further infer that the defendant was the assailant. Defendant contends that the jewelry was the only evidence presented by the State linking the defendant to the offenses. Besides being factually incorrect, this contention relates, not to the admissibility of the evidence, but to the sufficiency of the State's case to withstand defendant's motion to dismiss for insufficiency of the evidence.

In addition to tending to prove the offense of felonious possession of stolen property, the fact that the defendant was in possession of the stolen jewelry recently after it was stolen from the victim by her attacker has probative value on the issue of the identity of the perpetrator of the rape and kidnapping.[3] Such highly probative evidence necessarily is prejudicial to the defendant—otherwise it would not have such great probative value. However, we do not find its prejudicial effect to be "undue" or to substantially outweigh its probative value so as to require exclusion pursuant to Rule 403. We therefore find no error in the trial judge's discretionary ruling denying defendant's pretrial motion to exclude the watch and ring.

[2] The remainder of defendant's assignments of error relate to the sufficiency of the evidence to support his convictions and motions to "set aside the verdict," for a new trial, and for arrest of judgment. Defendant did not object at trial to the denial of these motions. Defendant's argument on all these assignments of error essentially is that the State's evidence was insufficient to take the case to the jury.

In *State v. Powell*, 299 N.C. 95, 261 S.E. 2d 114 (1980), this Court set out the standard of review of a trial court's denial of defendant's motion to dismiss at the close of the State's evidence.

In testing the sufficiency of the evidence to sustain a conviction, a motion for dismissal pursuant to G.S. 15A-1227 is identical to a motion for judgment as in the case of nonsuit

---

3. " 'Whenever goods have been taken as a part of the criminal act, the fact of subsequent possession is some indication that the possessor was the taker, *and therefore the doer of the whole crime.*' 1 Wigmore on Evidence § 153 (3d Ed. 1940)." *State v. Joyner*, 301 N.C. 18, 29, 269 S.E. 2d 125, 132 (1980) (emphasis in original).

under G.S. 15-173. Cases dealing with the sufficiency of evidence to withstand the latter motion are therefore applicable to motions made under G.S. 15A-1227. *See State v. Smith*, 40 N.C. App. 72, 252 S.E. 2d 535 (1979).

Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied. *State v. Roseman*, 279 N.C. 573, 184 S.E. 2d 289 (1971); *State v. Mason*, 279 N.C. 435, 183 S.E. 2d 661 (1971).

If the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion should be allowed. *State v. Cutler*, 271 N.C. 379, 156 S.E. 2d 679 (1967); *State v. Guffey*, 252 N.C. 60, 112 S.E. 2d 734 (1960). This is true even though the suspicion so aroused by the evidence is strong. *State v. Evans*, 279 N.C. 447, 183 S.E. 2d 540 (1971); *State v. Chavis*, 270 N.C. 306, 154 S.E. 2d 340 (1967).

The terms "more than a scintilla of evidence" and "substantial evidence" are in reality the same and simply mean that the evidence must be existing and real, not just seeming or imaginary. *See State v. Smith, supra. But see State v. Agnew*, 294 N.C. 382, 241 S.E. 2d 684 (Exum, J., dissenting), *cert. denied*, 439 U.S. 830, 99 S.Ct. 107, 58 L.Ed. 2d 124 (1978).

The evidence is to be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom; contradictions and discrepancies are for the jury to resolve and do not warrant dismissal; and all of the evidence actually admitted, whether competent or incompetent, which is favorable to the State is to be considered by the court in ruling on the motion. *State v. Thomas*, 296 N.C. 236, 250 S.E. 2d 204, (1978); *State v. McKinney*, 288 N.C. 113, 215 S.E. 2d 578 (1975).

The trial court in considering such motions is concerned only with the sufficiency of the evidence to carry the case to

the jury and not with its weight. *State v. McNeil*, 280 N.C. 159, 185 S.E. 2d 156 (1971); *State v. Primes*, 275 N.C. 61, 165 S.E. 2d 225 (1969). The trial court's function is to test whether a *reasonable inference* of the defendant's guilt of the crime charged may be drawn from the evidence. *State v. Thomas, supra; State v. Rowland*, 263 N.C. 353, 139 S.E. 2d 661 (1965).

The test of the sufficiency of the evidence to withstand the motion is the same whether the evidence is direct, circumstantial or both. *State v. Stephens, supra.* "When the motion . . . calls into question the sufficiency of circumstantial evidence, the question for the Court is whether a reasonable inference of defendant's guilt may be drawn from the circumstances. If so, it is for the jury to decide whether the facts, taken singly or in combination, satisfy them beyond a reasonable doubt that the defendant is actually guilty." *State v. Rowland, supra. See also State v. Irick*, 291 N.C. 480, 231 S.E. 2d 833 (1977); *State v. Cutler, supra.* In passing on the motion, evidence favorable to the State is to be considered as a whole in order to determine its sufficiency. This is especially true when the evidence is circumstantial since one bit of such evidence will rarely point to a defendant's guilt. *State v. Thomas, supra. See also State v. Rowland, supra.*

*State v. Powell*, 299 N.C. 95, 98-99, 261 S.E. 2d 114, 117-18. *See also State v. Wilson*, 313 N.C. 516, 534, 330 S.E. 2d 450, 463 (1985).

On this appeal, the defendant does not contend that the State failed to present substantial evidence of each element of the offenses charged. Rather, the defendant challenges the sufficiency of the State's evidence as to the identity of the perpetrator of the offenses. Both the State and the defendant recognize that the State's case was circumstantial as to the identity issue.

The defendant again contends that his possession of the jewelry shortly after the commission of the offenses is the only evidence linking him to those offenses, and in order to find that he was the perpetrator, the jury would have had to pile inference upon inference.

First, as the State points out, the jewelry was not the only evidence presented that tended to link the defendant with the

commission of the offenses. Uncontradicted, competent evidence was introduced tending to show that analysis of semen stains on the victim's underwear revealed a blood grouping reaction consistent with that of this defendant and fourteen percent of the population of this state. In addition, the description the victim gave of her assailant, while certainly insufficient for a positive identification, is consistent with the defendant's appearance. The victim never attempted to identify the defendant as her assailant and repeatedly asserted that she never had an opportunity to observe her attacker's face. Indeed, she clearly indicated that she could not identify the defendant as her attacker. However, she was adamant in her description of her assailant as a tall, thin black man in his twenties. This description is consistent with the defendant's appearance. Defendant's reliance on cases involving attempted eyewitness identifications are inapposite; the identity issue in this case had to be resolved on circumstantial, rather than "direct," evidence.

It is immaterial that any individual piece of circumstantial evidence, taken alone, is insufficient to establish the identity of the perpetrator. *See State v. Ledford,* 315 N.C. 599, 340 S.E. 2d 309 (1986). If all the evidence, taken together and viewed in the light most favorable to the State, amounts to substantial evidence of each and every element of the offense and of defendant's being the perpetrator of such offense, a motion to dismiss is properly denied. *State v. Powell,* 299 N.C. 95, 261 S.E. 2d 114.

Defendant's contention that the jury was required to pile inference upon inference in order to convict him is without merit. It is well settled that " '[a] basic requirement of circumstantial evidence is reasonable inference from established facts. Inference may not be based upon inference. Every inference must stand upon some clear and direct evidence, and not upon some other inference or presumption.' " *State v. Ledford,* 315 N.C. 599, 610, 340 S.E. 2d 309, 317 (citations omitted).

In the instant case, the jury was required to make only one inference in order to find that the defendant was the perpetrator of all the offenses for which he was convicted: that he took the jewelry from the victim on 3 January 1985. The "established facts" which remained uncontroverted at trial and from which the jury could reasonably infer that the defendant was the man who

took the jewelry are as follows: A tall, thin black man in his twenties abducted the victim, stole her jewelry, and raped her; the defendant is a tall, thin black man in his twenties; the blood grouping reactions of semen stains on the victim's underpants were consistent with this defendant and fourteen percent of the general population; the defendant was in possession of the victim's wedding band eight days after it was stolen from the victim, and he pawned the ring at the M&T Pawn Shop for five dollars; the defendant was not in possession of just one item taken from the victim—the ring—but was *also* in possession of the victim's stolen digital watch, and he gave it to his girlfriend prior to his 17 January 1985 incarceration, fourteen days after it had been stolen from the victim; the person who stole the victim's jewelry was the same person who kidnapped and raped her.

From this uncontroverted evidence, the jury could reasonably draw one essential inference: that the defendant was the man who took the victim's jewelry and kidnapped and raped her on 3 January 1985. Unlike the situation in *State v. Parker*, 268 N.C. 258, 150 S.E. 2d 428 (1966), or *State v. Davis*, 74 N.C. App. 208, 328 S.E. 2d 11, *disc. rev. denied*, 313 N.C. 510, 329 S.E. 2d 406 (1985), the State's evidence did not require stacking of inferences in order to identify the defendant as the perpetrator of the offenses.

Therefore, in denying defendant's motion to dismiss for insufficiency of the evidence, the trial court properly determined at the close of the State's evidence that a reasonable inference of defendant's guilt could be drawn from the circumstances. It was for the jury, then, to decide whether the facts, taken singly or in combination, satisfied them beyond a reasonable doubt that the defendant was actually guilty. *See State v. Rowland*, 263 N.C. 353, 139 S.E. 2d 661 (1965). We find no error in the trial court's denial of defendant's motion to dismiss at the close of the State's evidence.

At his sentencing hearing, the defendant made three motions: a motion to "set aside the verdict as being against the weight of the evidence"; a motion for a new trial for errors committed throughout the course of the trial; and a motion in arrest of judgment. The defendant declined the trial judge's invitation to be heard as to each of these motions, and each motion was denied.

Defendant did not object to denial of any motion and takes exception in the record only to the denial of his motion to "set aside the verdict." This motion, properly denominated "a motion for dismissal for insufficiency of the evidence to sustain a conviction . . . after return of a verdict of guilty and before entry of judgment," N.C.G.S. § 15A-1227(a)(3) (1983), was correctly denied for the same reasons as for the proper denial of his motion to dismiss at the close of the State's evidence, N.C.G.S. § 15A-1227(a)(1). Although the defendant has failed to preserve for review the denial of the remaining motions, N.C.R. App. P. 10(b)(1), we have reviewed them and we find no error.

No error.