An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-881

Filed 3 December 2025

Iredell County, No. 19CR056237-480

STATE OF NORTH CAROLINA

v.

ANN MARIE SCHLAGETER, Defendant.

Appeal by Defendant from judgment entered 27 March 2024 by Judge R. Stuart Albright in Iredell County Superior Court. Heard in the Court of Appeals 10 June 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Katashia L. Cooper, for the State.*
>
> *Round 2 Legal, by Ashley A. Crowder, for Defendant-Appellant.*

CARPENTER, Judge.

Ann Marie Schlageter ("Defendant") appeals from judgment entered after a jury found her guilty of one count of obtaining property by false pretenses. On appeal, Defendant argues the trial court erred by: (1) denying Defendant's motion to dismiss for insufficient evidence; (2) denying Defendant's motion to dismiss based on a fatal variance between the evidence and the indictment; (3) instructing the jury on

obtaining property by false pretenses and acting in concert; and (4) imposing a suspended sentence with community-based probation. After careful review, we discern no error.

## I. Factual & Procedural Background

On 5 May 2021, an Iredell County grand jury indicted Defendant and her husband, Shane Schlageter ("Shane"), for one count of obtaining property by false pretenses. Defendant's indictment alleged that she

> unlawfully, willfully, and feloniously did knowingly and designedly, with the intent to cheat and defraud, obtain $12,250 in US Currency, by means of a false pretense which was calculated to deceive and did deceive. The false pretense consisted of the following: The defendant took a check written for $12,250 by [Lee] Powell and cashed the check for $12,250 in US Currency, for decking material to be used to build a deck. The defendant cashed the check and never provided the decking material or completed the deck.

On 7 December 2022, an Iredell County grand jury indicted Defendant and Shane for one count of felony conspiracy to obtain property by false pretenses, stemming from the same incident. The trial court joined the charges against Defendant and Shane, and the case proceeded to trial on 26 March 2024. The evidence tended to show the following.

In 2018, Sue and Lee Powell (the "Powells") purchased a home on Big Indian Loop in Mooresville, North Carolina. Shortly after, the Powells elicited the help of a contractor to remodel the interior of the home. The contractor then hired Shane to

perform the framing and structural work. Upon completion of the interior remodel, the Powells hired Shane to work on other home projects, including siding repairs. While working on those projects, Shane introduced Defendant to Lee, which led to discussions about Shane and Defendant remodeling the Powells' deck. In mid-November 2018, Defendant and Shane, through their company A&S Investments Co. NC, LLC, entered into a contract with the Powells to remodel the Powells' deck (the "Deck Contract").

The relevant contract provisions stated:

> Remove existing 700 sq feet of decking. Check deck for rott (sic) and present solution to homeowner. Any rott (sic) repair that is required is at an additional cost and is not included in the scope of this contract. Reflash backside of house along with entire deck structure. Install sandstone wolf decking boards with hidden fasteners. Remove existing handrails. Install 6x6 post and intermediate anodized bronze posts every other post for a total of 17 posts. Install cable handrails system with 4 strands. Top rail will consist of anodized bronze top rail. No changes to stairs or landing are included in this contract.
>
> This is a labor and materials contract. ***Contract price is for labor and all materials. All materials should be provided by contractor.***

The total contract price was $24,500, with an initial forty-percent deposit.

Days later, on 16 November 2018, Defendant emailed Lee requesting a fifty-percent deposit instead of forty "because the cost [of materials] is more . . . and they have to be preordered." When Lee did not respond to Defendant's email or pay the increased deposit, Defendant emailed Lee again on 20 November 2018, stating she

- 3 -

needed "to order the materials and they take a week to [ten] days" to arrive. On 26 November 2018, the Powells paid the increased deposit of $12,250, labeling the check as "deck deposit."

Defendant testified that she purchased "insignificant materials" with the Powells' deposit, but did not purchase the deck boards, which were part of the deck materials referenced in her emails. Defendant explained that despite her representation in the 20 November 2018 email, she could not immediately purchase the deck boards after receiving Lee's deposit because the deck construction had not begun. According to Defendant, the deck construction could not commence until the siding was complete, which was still in progress due to a failed inspection in December 2018. Defendant explained that purchasing the deck boards before completion of the siding project was ill-advised because the deck boards would be stored outside until the deck project began, which could lead to the boards being damaged by the environment. In other words, although Defendant received the Powells' increased deposit on 26 November 2018, prior to the failed December inspection, she did not order the deck boards.

Lee testified that Defendant never informed him that the deck boards could not be purchased until after the siding was complete or that there was a failed inspection. But Lee knew the deck construction could not begin until the siding was completed. When Lee returned from an extended trip in March 2019, he discovered that little progress had been made on the siding. Lee believed the lack of progress

was due to Defendant and Shane prioritizing a "real important" construction project elsewhere.

Defendant testified that the siding was worked on in "January and February" 2019 and was completed around that time. Although the siding project was complete, Defendant explained that she was still unable to order the deck boards because Lee had hired another contractor to paint the outside of his house in March. According to Defendant, Lee insisted the deck boards were not to be brought to the property or installed until after the painting was done to avoid getting paint on the boards.

Demolition of the existing deck did not begin until April 2019, after the painting was completed. Once the deck was demolished, Shane discovered an issue with the joists and informed Lee they would need to be replaced before a new deck could be built. Thereafter, Lee entered into an additional agreement with Defendant and Shane to replace the joists.

On 7 June 2019, after replacing the joists, Shane attempted to purchase the deck boards so he could begin deck construction. Shane went to a small specialty company because the Powells wanted a particular type of board, but the company would not accept Shane's offer to pay through check. Shane and Defendant also attempted to purchase the boards using their credit cards, but the price exceeded their credit limit. Defendant informed Lee she could not purchase the deck boards at that time and the only way they could avoid postponing the deck construction further was for Lee to purchase the deck boards himself. Defendant explained that if Lee

purchased the boards, she would deduct the purchase price from his remaining balance on the deck contract. Lee agreed and purchased the deck boards on 11 June 2019.

According to Lee, around mid-June 2019, when the deck was between twenty-five and fifty-percent complete, he discovered Shane was using incorrect fasteners on the deck. Around that time, Lee requested a different type of handrail than what was described in the Deck Contract. Defendant explained that she told Lee they could not change the handrail to Lee's desired style because it was not part of the Deck Contract. Shortly thereafter, Lee informed Shane and Defendant that he "was done" with the Deck Contract. In July 2019, Lee reported Shane and Defendant to the Iredell County Sheriff's Office.

At the close of evidence, Defendant and Shane moved to dismiss all charges for insufficient evidence. The trial court denied Defendant and Shane's motions to dismiss as to the obtaining property by false pretenses charges but granted the motions with respect to the conspiracy charges. The jury found Defendant guilty of obtaining property by false pretenses and found Shane not guilty. The trial court "considered an active sentence" but in its discretion imposed "a suspended sentence of a minimum of [six] and maximum of [seventeen] months, suspended for [twenty-four] months on the" conditions that Defendant complete fifty hours of community service within the first 180 days of probation and pay a $5,000 restitution payment.

Defendant gave oral notice of appeal in open court. On 28 March 2024, Defendant gave written notice of appeal.

## II. Jurisdiction

This Court has jurisdiction under N.C. Gen. Stat. § 7A-27(b)(1) (2023).

## III. Issues

The issues are whether the trial court erred by: (1) denying Defendant's motion to dismiss for insufficient evidence; (2) denying Defendant's motion to dismiss based on a fatal variance between the evidence and the indictment; (3) instructing the jury on obtaining property by false pretenses and acting in concert; and (4) imposing a suspended sentence with community-based probation.

## IV. Analysis

Defendant first argues the trial court erred in denying her motion to dismiss for insufficient evidence because the State did not provide substantial evidence of each element of obtaining property by false pretenses. Defendant further argues that, even if the trial court properly denied the motion to dismiss for insufficient evidence, it should have granted her motion to dismiss due to the fatal variance between the indictment and the evidence. Defendant also contends that, because the State's evidence was insufficient to support a conviction for obtaining property by false pretenses, the trial court prejudicially erred by instructing the jury on that charge. Finally, in light of the alleged evidentiary issues, Defendant argues the trial court erred by proceeding to sentencing and thereafter, imposing an improper

sentence. For the following reasons, we discern no error.

**A. Sufficiency of Evidence**

Defendant argues the State failed to present substantial evidence for each element of obtaining property by false pretenses.

"Whether the State presented substantial evidence of each essential element of the offense is a question of law; therefore, we review the denial of a motion to dismiss de novo." *State v. Crockett*, 368 N.C. 717, 720, 782 S.E.2d 878, 881 (2016). Under de novo review, this Court "'considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008) (quoting *In re Greens of Pine Glen, Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)). "The question for a court on a motion to dismiss for insufficient evidence 'is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense.'" *State v. Tucker*, 380 N.C. 234, 236–37, 867 S.E.2d 924, 927 (2022) (quoting *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78, 265 S.E.2d 164, 169 (1980).

"In ruling on a motion to dismiss, the trial court must examine the evidence in the light most favorable to the State, and the State is entitled to every reasonable inference and intendment that can be drawn therefrom." *State v. Olson*, 330 N.C.

557, 564, 411 S.E.2d 592, 595 (1992). "Contradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve." *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993). "If a reasonable inference of defendant's guilt may be made, then 'it is for the jury to decide whether the facts, taken singly or in combination, satisfy [it] beyond a reasonable doubt that the defendant is actually guilty.'" *State v. Hayden*, 212 N.C. App. 482, 484, 711 S.E.2d 492, 494 (2011) (quoting *State v. Thomas*, 296 N.C. 236, 244, 250 S.E.2d 204, 209 (1978)).

Obtaining property by false pretenses consists of four elements: " '(1) a false representation of a subsisting fact or a future fulfillment or event, (2) which is calculated and intended to deceive, (3) which does in fact deceive, and (4) by which one person obtains or attempts to obtain value from another.' " *State v. Pierce*, 279 N.C. App. 494, 499, 865 S.E.2d 335, 339 (2021) (quoting *State v. Parker*, 354 N.C. 268, 284, 553 S.E.2d 885, 897 (2001)); N.C. Gen. Stat. § 14-100(a) (2023).

In the light most favorable to the State, the evidence demonstrates Defendant, with an intent to deceive, falsely represented that she needed to promptly purchase the deck boards as "they take a week to [ten] days to arrive" to induce the Powells to pay an increased deposit. Indeed, Defendant and the Powells initially agreed to the Deck Contract, which required a forty-percent deposit due at signing. Days later, Defendant emailed the Powells requesting a fifty-percent deposit instead of forty due to higher material costs and the need to preorder the deck materials given the delivery timeline. Despite securing the increased deposit to cover the cost of all deck

materials after representing the need to promptly preorder the materials, Defendant admitted that she did not order the deck boards after receiving the increased deposit because she "couldn't just let [the deck boards] sit there for months." Strikingly, Defendant claims she could not order the deck boards due to a failed inspection that occurred in December—which had yet to occur when she requested and received the increased deposit.

Moreover, Defendant's intent to deceive may be inferred from her conduct of stressing the importance of promptly ordering the materials, but failing to do so despite her receipt of the increased deposit. *See State v. Lamp*, 383 N.C. 562, 570, 884 S.E.2d 623, 628 (2022) (quoting *State v. Bell*, 285 N.C. 746, 750, 208 S.E.2d 506, 508 (1974) (" 'Intent is a mental attitude seldom provable by direct evidence. It must ordinarily be proved by circumstances from which it may be inferred.' "). Deception occurred because the Powells paid the increased deposit so Defendant could preorder the deck materials and boards and Defendant never ordered the materials. Finally, by making this false representation, Defendant obtained the increased $12,250 deposit, a $2,450 increase in value from the initial forty percent-deposit. Because the State presented substantial evidence to support each of the four elements of obtaining property by false pretenses, the trial court did not err by denying Defendant's motion to dismiss. *See Smith*, 300 N.C. at 78–79, 265 S.E.2d at 169.

**B. Fatal Variance**

Defendant next contends there was a fatal variance between the indictment

and the State's evidence because the State failed to prove intent, false representation, and deception.

This Court reviews the issue of a fatal variance de novo. *State v. Cheeks*, 267 N.C. App. 579, 612, 833 S.E.2d 660, 681 (2019). Accordingly, this Court "'considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *Williams*, 362 N.C. at 632–33, 669 S.E.2d at 294 (quoting *In re Greens of Pine Glen, Ltd. P'ship*, 356 N.C. at 647, 576 S.E.2d at 319).

"[A] defendant in a criminal case may not make the sufficiency of the State's evidence at trial the basis of his issue on appeal unless he made a motion to dismiss at trial." *State v. Juran*, 294 N.C. App. 81, 84, 901 S.E.2d 872, 876 (2024); *see* N.C. R. App. P. 10(a)(3) (2023). Although a motion to dismiss for insufficiency of the evidence does not typically preserve a fatal variance argument for appeal, we "continually review[ ] the merits of fatal variance arguments—all while assuming without deciding whether a defendant, upon a motion to dismiss pursuant to Rule 10(a)(3), has preserved a fatal variance argument as a sufficiency of the evidence issue." *Juran*, 294 N.C. App. at 85, 901 S.E.2d at 876.

A fatal variance argument is based on two policy concerns: "(1) insuring that the defendant is able to prepare his defense against the crime with which he is charged and (2) protecting the defendant from another prosecution for the same incident." *State v. Glidewell*, 255 N.C. App. 110, 113, 804 S.E.2d 228, 232 (2017). "A fatal variance may exist where there is a discrepancy between either the allegations

and the offense established or the allegations and the jury instruction." *Juran, 294 N.C. App.* at 83, 901 S.E.2d at 875. "The variance must involve an essential element of the crime charged, and the defendant must demonstrate prejudice as a result of the variance[.]" *Cheeks*, 267 N.C. App. at 612–13, 833 S.E.2d at 682. A defendant must show there was "a fatal variance between the offense charged and the proof as to the gist of the offense." *State v. Waddell*, 279 N.C. 442, 445, 183 S.E.2d 644, 646 (1971).

Here, the indictment charged Defendant with obtaining property by false pretenses. The indictment alleged that Defendant, with the intent to defraud, obtained $12,250 from Lee by falsely representing that the increased deposit would be used to purchase deck boards, when in fact Defendant "cashed the check and never provided the decking material or completed the deck."

Assuming without deciding that Defendant preserved her fatal variance argument, Defendant did not establish a fatal variance. *See Juran*, 294 N.C. App. at 85, 901 S.E.2d at 876. Here, the indictment explicitly referenced "false pretenses," and the State's theory and evidence at trial tended to show Defendant obtained property by false pretenses. As previously explained, the State presented substantial evidence of obtaining property by false pretenses. Because Defendant was on notice of the crime charged and the State's proof aligned with the indictment, Defendant did not demonstrate a fatal variance. *See id.* at 85, 901 S.E.2d at 876; *Glidewell*, 255 N.C. App. at 113, 804 S.E.2d at 232. Accordingly, the trial court did not err in denying

Defendant's motion to dismiss.  *See Waddell*, 279 N.C. at 445, 183 S.E.2d at 646.

**C. Jury Instructions**

Defendant also argues the trial court erred by instructing the jury on obtaining property by false pretenses because the State failed to present evidence of each essential element of the offense.  In addition, Defendant challenges the trial court's acting in concert instruction "as it allowed the jury to combine the actions of [Shane and Defendant] to reach a verdict of guilty."

Typically, to preserve an issue for appellate review, a litigant must raise the issue and secure a ruling from the trial court.  N.C. R. App. P. 10(a)(1).  "For evidentiary and instructional errors, this typically requires the party challenging the evidence or jury instruction to make a timely objection." *State v. Reber*, 386 N.C. 153, 157, 900 S.E.2d 781, 785 (2024).  Nonetheless, we may review unpreserved evidentiary and instructional issues for plain error.  *State v. Gregory*, 342 N.C. 580, 584, 467 S.E.2d 28, 31 (1996).  In order for this Court to review for plain error, the defendant must "specifically and distinctly" argue plain error.  *State v. Frye*, 341 N.C. 470, 496, 461 S.E.2d 664, 677 (1995); N.C. R. App. P. 10(a)(4).  Defendant concedes that he did not object to the jury instructions.  Because Defendant "specifically and distinctly" argues the trial court plainly erred in its jury instructions, we will review for plain error.  *See Frye*, 341 N.C. at 496, 461 S.E.2d at 677.

Under plain-error review:

> First, the defendant must show that a fundamental error

occurred at trial. Second, the defendant must show that the error had a probable impact on the outcome, meaning that absent the error, the jury probably would have returned a different verdict. Finally, the defendant must show that the error is an exceptional case that warrants plain error review, typically by showing that the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*State v. Reber*, 386 N.C. 153, 158, 900 S.E.2d 781, 786 (2024) (citations and quotation marks omitted). "[A] trial judge should not give instructions to the jury which are not supported by the evidence produced at the trial." *State v. Epps*, 231 N.C. App. 584, 586, 752 S.E.2d 733, 734 (2014) (alteration in original and citation omitted).

As explained above, the State presented sufficient evidence of the elements of obtaining property by false pretenses. As such, the trial court did not err by instructing the jury on obtaining property by false pretenses. *See id.* at 586, 752 S.E.2d at 734. The trial court likewise did not err in giving the acting-in-concert instruction, as there was sufficient evidence from which a jury could find that Defendant and Shane acted together toward a common plan or purpose. *See State v. Glover*, 376 N.C. 420, 424, 851 S.E.2d 865, 869 (2020). The evidence at trial tended to show that Defendant and Shane: jointly operated A&S Investments Co. NC, LLC; contracted with the Powells to remodel their deck; and coordinated efforts to obtain deck boards, including Shane's attempt to purchase them and arrangement of how the expense would be deducted from the contract balance. Thus, because the trial court did not err, it did not plainly err. *See Reber*, 386 N.C. at 158, 900 S.E.2d at 786.

## D. Sentencing

Finally, Defendant argues the trial court erred in imposing a sentence because this matter should have not reached the sentencing phase. Specifically, Defendant contends that her sentence is not supported by the evidence and should therefore be vacated. Defendant further contends that "the decision to place her on supervised, rather than unsupervised probation was an abuse of discretion" because she only had one prior misdemeanor, was a level 1 for sentencing, the crime charged was nonviolent, and this was a civil matter drawn out to a criminal matter.

When a defendant challenges the sentence imposed by the trial court, "our standard of review is 'whether [the] sentence is supported by evidence introduced at the trial and [the] sentencing hearing.'" *State v. Deese*, 127 N.C. App. 536, 540, 491 S.E.2d 682, 685 (1997) (quoting N.C. Gen. Stat. § 15-1444(a)(1) (1996)). "A challenge to a trial court's decision to impose a condition of probation is reviewed on appeal using an abuse of discretion standard of review." *State v. Allah*, 231 N.C. App. 88, 98, 750 S.E.2d 903, 911 (2013). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988).

As previously discussed, this case was properly submitted to the jury. Although the trial court considered imposing an active sentence, it ultimately imposed a suspended sentence with community punishment. The sentence imposed

was within the presumptive range; suspending the sentence and imposing community punishment was permissible. Therefore, we cannot say the trial court's decision to sentence Defendant within the presumptive range and impose a community punishment was arbitrary or manifestly unsupported by reason. *See id.* at 285, 372 S.E.2d at 527. Thus, the trial court did not abuse its discretion.

## V. Conclusion

The trial court did not err in denying Defendant's motion to dismiss because the State presented substantial evidence of obtaining property by false pretenses. Consequently, the trial court did not err in denying Defendant's motion to dismiss based on a fatal variance between the evidence and the indictment. Furthermore, the trial court did not err in instructing the jury. Finally, because the trial court properly sentenced Defendant within the presumptive range, the trial court did not abuse its discretion by sentencing Defendant to supervised probation. Accordingly, we discern no error.

NO ERROR.

Chief Judge DILLON and Judge MURRY concur.

Report per Rule 30(e).