IN THE SUPREME COURT OF NORTH CAROLINA

No. 64PA24

Filed 20 March 2026

STATE OF NORTH CAROLINA

v.

DAMARLO JAMON PERRY

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous, unpublished decision of the Court of Appeals, No. COA23-375 (N.C. Ct. App. Feb. 20, 2024), reversing an order denying defendant's motion to dismiss entered on 29 August 2022 and vacating a judgment entered on 1 September 2022 by Judge David L. Hall in Superior Court, Cabarrus County. Heard in the Supreme Court on 17 September 2025.

*Jeff Jackson, Attorney General, by Stacey A. Phipps, Special Deputy Attorney General, for the State-appellant.*

*Kaelyn N. Sweet for defendant-appellee.*

BERGER, Justice.

Defendant was convicted of, among other things, robbery with a dangerous weapon. The Court of Appeals reversed the conviction after it determined that the State failed to present substantial evidence that defendant, or someone with whom he was acting in concert, took the victim's property. We are, therefore, concerned here with the sufficiency of evidence needed to survive a motion to dismiss and submit a charge to the jury.

In our system of justice, the jury has dominion over questions of fact. Mindful of the jury's sphere, a motion to dismiss should be granted only when no "reasonable inference of the defendant's guilt of the crime charged may be drawn from the evidence." *State v. Powell*, 299 N.C. 95, 99 (1980) (emphasis omitted). In this case, the trial court applied the appropriate standard and properly denied defendant's motion to dismiss. We, therefore, reverse the decision of the Court of Appeals.

## I.   Factual and Procedural Background

Around 8:00 p.m. on 18 May 2021, Damon Scott arrived at the apartment of Shenika Lynch with his phone, house key, and $250. When Scott attempted to enter the apartment, he was struck from behind and fell to the ground. Defendant hit Scott on the top of his head with a gun, and as Scott attempted to get to his feet, defendant and other assailants stomped on Scott. Scott recognized defendant among his attackers and saw defendant holding a gun.

Scott passed out during the attack. Later that night, he woke up in the middle of the road, severely injured. Scott realized his phone, house key, and cash were missing.[1] He flagged down a driver who drove him home where he attempted to sleep.

---

[1] While evidence is conflicting regarding the moment Scott realized his possessions were missing, *see State v. Perry*, No. COA23-375, 2024 WL 687053, at fn. 1 (N.C. Ct. App. Feb. 20, 2024), on a motion to dismiss, "we view the evidence in the light most favorable to the State, resolving all conflicts in the evidence in favor of the State and giving it the benefit of all reasonable inferences," *State v. Tirado*, 358 N.C. 551, 582 (2004). Here, Scott's statement to Detective John Cramer that he realized his possessions were missing after waking up in the road was elicited by the defense on cross-examination of Detective Cramer. As the trial court acknowledged, the statement was thus admitted into evidence. Accordingly, for purposes of this opinion, we accept as true Scott's statement that he realized his possessions were missing after waking up in the road.

Later, after Scott woke up gagging on his own blood and struggling to breathe, his niece Lemon Collins, took him to a hospital where he was intubated and later transferred to a Level 1 Trauma Center in Charlotte. Scott was hospitalized for more than two weeks, and during that time he underwent blood transfusions and multiple surgeries. His missing possessions were never recovered.

Defendant was indicted for robbery with a dangerous weapon, assault inflicting serious bodily injury, drug-related offenses, and attaining habitual felon status. At trial, the State introduced Rule 404(b) evidence related to defendant's participation in a 2012 armed robbery. *See* N.C.G.S. § 8C-1, Rule 404(b) (2025). Testimony showed that in the prior incident, defendant had "approached the victim, asked the victim for his money, . . . assaulted the victim with [a] handgun," and then stole his wallet. The witness explained that defendant had "pistol-whipped" the victim, which the witness clarified meant "[s]triking him with the handgun on his head." The evidence regarding this prior crime was allowed for limited purposes to

> prove that at the time of the alleged offenses, [defendant] had the intent, which is a necessary element of both assault inflicting serious bodily injury and robbery with a dangerous weapon, [and the evidence] is offered to the extent that [the jury] find[s] that . . . there may have existed in [defendant's] mind a plan or scheme, design, involving the crimes he is accused of or the absence of accident or mistake.

At the close of the State's evidence, defendant moved to dismiss the charge of robbery with a dangerous weapon, arguing that there was insufficient evidence for the jury to determine that defendant "took property from the person of another or in

that person's presence." The trial court denied the motion. At the close of all evidence, defendant declined to put on evidence and renewed his motion to dismiss. The trial court denied the motion, reasoning:

> In this case there is the evidence properly admitted about the 2012 event. And there's a uniqueness there. It is not unheard of, but it is relatively uncommon in terms of robbery with a firearm or robbery with a dangerous weapon. There is evidence that was admitted about [defendant] approaching the subject, striking him with a firearm instead of threatening him with a firearm or in fact shooting him or firing the weapon, but using it as a blunt instrument and robbed the gentleman. That has been judicially established. I limited the evidence such that it would not be unfairly prejudicial.
>
> This allegation from Mr. Scott, if the jury chooses to believe him, is that . . . [d]efendant used the firearm as something to strike him with, a blunt force instrument to strike him in the head. And there is evidence that a reasonable jury could believe that the alleged victim's property was missing potentially very soon thereafter. But there is a reasonable inference that those who attacked the alleged victim took the alleged victim's property.
>
> For those reasons I deem it a question of fact for the jury, and will respectfully deny the motion.

The jury found defendant guilty of robbery with a dangerous weapon and assault inflicting serious bodily injury. Defendant thereafter pled guilty to attaining habitual felon status, and he was sentenced to 146 to 188 months in prison. Defendant appealed the robbery conviction to the Court of Appeals, arguing that the State failed to present sufficient evidence for a reasonable jury to find that he, or someone with whom he was acting in concert, took Scott's property.

In an unpublished opinion, the Court of Appeals reversed the trial court's order denying defendant's motion to dismiss and vacated defendant's conviction for robbery with a dangerous weapon, holding that "the circumstantial evidence in this case—the victim's missing property, [d]efendant's opportunity to commit the crime, and [d]efendant's intent or plan to rob—even in the light most favorable to the State, is not sufficient to sustain [d]efendant's conviction under our Supreme Court's caselaw." *State v. Perry*, No. COA23-375, 2024 WL 687053, at *1 (N.C. Ct. App. Feb. 20, 2024). We allowed the State's petition for discretionary review on 13 December 2024. For the reasons discussed herein, we reverse the judgment of the Court of Appeals.

## II.    Discussion

To survive a motion to dismiss, the State faces a "low bar." *State v. Ford*, 388 N.C. 713, 727 (2025) (Berger, J., concurring). "If there is more than a scintilla of competent evidence to support the allegations in the warrant or indictment, it is the court's duty to submit the case to the jury." *State v. Horner*, 248 N.C. 342, 344–45 (1958); *see also State v. Dover*, 381 N.C. 535, 547 (2022) (more than a scintilla of evidence simply means "the amount necessary to persuade a rational juror to accept a conclusion[.]" (cleaned up)). While precedent has also articulated the standard as requiring "substantial evidence," *State v. Golder*, 374 N.C. 238, 249 (2020), "[t]he terms 'more than a scintilla of evidence' and 'substantial evidence' are in reality the same," *State v. Gillard*, 386 N.C. 797, 832 (2024) (quoting *State v. Earnhardt*, 307 N.C. 62, 66 (1982)).

"When reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the State, resolving all conflicts in the evidence in favor of the State and giving it the benefit of all reasonable inferences." *State v. Tirado*, 358 N.C. 551, 582 (2004). "Moreover, circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence." *Id.* (cleaned up). "When the motion calls into question the sufficiency of circumstantial evidence, the question for the Court is whether a reasonable inference of defendant's guilt may be drawn from the circumstances." *Powell*, 299 N.C. at 99 (cleaned up).

"[E]vidence favorable to the State is to be considered as a whole in order to determine its sufficiency. This is especially necessary . . . when the proof offered is circumstantial, for rarely will one bit of such evidence be sufficient, in itself, to point to a defendant's guilt." *State v. Thomas*, 296 N.C. 236, 244–45 (1978). Further, "[c]ontradictions and discrepancies must be resolved in favor of the State, and the defendant's evidence, unless favorable to the State, is not to be taken into consideration." *State v. Stone*, 323 N.C. 447, 452 (1988) (quoting *State v. Bullard*, 312 N.C. 129, 160 (1984)). In other words, if there is more than a scintilla of evidence, "whether direct or circumstantial, or a combination, to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied." *Golder*, 374 N.C. at 250 (cleaned up).

To prove a defendant committed the offense of robbery with a dangerous weapon, the State must provide sufficient evidence of (1) an unlawful taking or an attempt to take personal property from the person or in the presence of another; (2) by use or threatened use of a firearm or other dangerous weapon; and (3) whereby the life of a person is endangered or threatened. *See State v. Hill*, 365 N.C. 273, 275 (2011); N.C.G.S. § 14-87(a) (2025). We have noted that "it is immaterial whether the intention to commit the theft was formed before or after force was used upon the victims." *State v. Barden*, 356 N.C. 316, 352 (2002) (quoting *State v. Green*, 321 N.C. 594, 605 (1988)).

Here, defendant challenged the sufficiency of the State's evidence as to the first element. Specifically, defendant argued that evidence of his "opportunity" to take Scott's property was insufficient to survive a motion to dismiss.

The Court of Appeals, relying on our precedent in *State v. Moore*, 312 N.C. 607 (1985), and *State v. Baker*, 338 N.C. 526 (1994), determined that the facts in this case were analogous to *Moore*. The court reasoned that "[u]nlike in *Baker*, the evidence here did not establish for how long Scott laid unconscious in the road before he awoke to discover his property missing," and "Scott's location in the road placed the vulnerable property in a public location inviting to passersby—like the store in *Moore*." *Perry*, 2024 WL 687053, at *4. The Court of Appeals concluded that "evidence of a defendant's mere opportunity to commit a crime is not sufficient to send the charge to the jury," *id.* at *3 (cleaned up), and "[e]vidence of a defendant's intent

or plan to take property does not itself support the inference that he followed through when presented with an opportunity," *id.* at *5.

But splintered, piecemeal, and formulaic comparisons to the facts of prior cases are not dispositive where precedent commands that the evidence must be considered "as a whole," *Thomas*, 296 N.C. at 245, and "[c]ontradictions and discrepancies must be resolved in favor of the State," *Stone*, 323 N.C. at 452 (quoting *Bullard*, 312 N.C. at 160). Thus, the Court of Appeals' application of our precedent was in error.

In *Moore*, we held that the trial court properly granted the defendant's motion to dismiss because the evidence "disclose[d] no more than an opportunity for [the] defendant, as well as others, to have taken the money." 312 N.C. at 613. There, the defendant sexually assaulted a store clerk at knifepoint in the store bathroom. *Id.* at 608–10. During the incident, the victim's purse was located behind the cashier's counter. *Id.* at 611. When the defendant left the store, the victim fled for help, leaving her purse behind and the store unlocked and unattended for at least forty minutes until police arrived. *Id.* at 612.

Notably, the store was located in a high-crime area described as "a vicinity in which [the victim's] sense of insecurity caused her to keep the store's *front* door locked during business hours." *Id.* at 613. When the victim returned to the store "some two hours" after the assault, her wallet was missing from inside her purse. *Id.* at 610. Without any other evidence to indicate the defendant had taken the wallet, this Court reasoned that the bare "opportunity for [the] defendant, as well as others," to commit

the crime was insufficient to send the robbery charge to the jury. *Id.* at 613.

In *Baker*, conversely, "[t]he disappearance of the [victim's] money was discovered around thirty minutes after [the] defendant was seen with the victim outside the store." *Baker*, 338 N.C. at 560. We concluded that the motion to dismiss was properly denied because "[the victim's] forceful abduction and the taking of the money are so closely related in time as to form a continuous chain of events." *Id.* at 561.

In the light most favorable to the State, the evidence here tended to show that defendant pistol-whipped Scott with the intent to rob him and that Scott's possessions were on his person at the time of the assault and missing when he regained consciousness in the road. More specifically, the State's evidence indicated that defendant was Scott's primary assailant, striking him on the head with a gun as he entered the apartment. Not only was defendant with Scott around the time period when Scott's possessions went missing, but he was a central force among the attackers who "started stomping [Scott] and knocked [him] out and took [him] and threw [him] out in the road."

Further, the 404(b) evidence was admitted to establish defendant's intent to commit the robbery in this case, and the jury was properly instructed on use of this evidence.[2] Although reasonable jurors might disagree on the ultimate question of

---

[2] The dissent fails to meaningfully engage with the 404(b) evidence and concludes that "the State only established that [defendant] had the opportunity to commit the offense[.]" But we are not at liberty to ignore the 404(b) evidence in our analysis, and when included,

guilt, the evidence "as a whole," *see Thomas*, 296 N.C. at 245, permitted an inference that the absence of Scott's wallet was the result of a continuous chain of events connected to defendant even though there is no direct evidence defendant took Scott's wallet.

_____

the State presented more than a scintilla of evidence of defendant's opportunity, intent, and temporal and spatial proximity to the victim and the victim's missing property at the time of the assault.

In addition to ignoring the 404(b) evidence, the dissent appears to argue that the doctrine of recent possession is relevant here. But that doctrine is applicable where the State presents evidence of a defendant's ex post possession of stolen property, a fact which does not exist in this case. Even though we have consistently held that recovery of a stolen item is not required to prove a taking occurred, *see State v. Palmer*, 334 N.C. 104, 112–113 (1993), the dissent suggests that the lack of such evidence is determinative here. We agree that evidence defendant possessed Scott's property after the assault, had it existed, would have certainly bolstered the State's case. But the lack of such evidence does not negate or otherwise discount the evidence that was elicited, and the dissent is simply wrong about the applicability of the doctrine here.

Moreover, the dissent mistakenly introduces a subjective component to its analysis, stating in a footnote that "in cases where the State's evidence was weak, like it is here, our Court has treated possession as significant." But the question here is not the weight but the existence of evidence. That is an objective measure. And by describing the evidence as "weak," the dissent impliedly acknowledges that the evidence in fact exists. This apparent misapprehension reveals yet another reason why use of the "substantial evidence" language favored by the dissent can confuse the inquiry, and "the more than a scintilla of evidence standard is probably the more accurate framing . . . [.]" *State v. Ford*, 388 N.C. 713, 727 (Berger, J., concurring) (cleaned up).

The dissent is also wrong to use *State v. Evans*, 279 N.C. 447 (1971), for support because, as the Court stated there, the State's evidence was "utterly inconsistent with an attempt to rob," and "completely negate[d] the allegation in the indictment of an assault upon [the victim] . . . and the allegation that they attempted to take personal property from [the] business establishment." *Evans*, 279 N.C. at 455. Here, the State's evidence is not nearly so deficient.

Finally, the dissent contends that "no evidence was presented creating an inference that [defendant] possessed Mr. Scott's property[.]" Although the State does not specifically argue this point, we note that robbery with a dangerous weapon does not require possession or even acquisition of stolen property to complete the offense; an attempt to take the property is enough. *See* N.C.G.S. § 14-87(a); *see also Hill*, 365 N.C. at 275 (conviction for robbery with a dangerous weapon requires either an "unlawful taking *or an attempt to take* personal property . . . [.]"(emphasis added)).

Our precedent makes clear that direct evidence is not required to overcome a motion to dismiss[.]" *See Tirado*, 358 N.C. at 582 ("[C]ircumstantial evidence may withstand a motion to dismiss . . . ." (quoting *Stone*, 323 N.C. at 452)). While the Court of Appeals was correct that "evidence of a defendant's mere opportunity to commit a crime is not sufficient to send the charge to the jury," *Perry*, 2024 WL 687053, at *3 (quoting *State v. Campbell*, 373 N.C. 216, 221 (2019)), the court failed to consider the State's evidence "as a whole," *see Thomas*, 296 N.C. at 245.

Here, there was more than a scintilla of evidence to allow the jury to "decide whether the evidence satisfies them beyond a reasonable doubt that the defendant is guilty." *See id.* The State did not simply present evidence of opportunity alone. To the contrary, the State's evidence tended to show that, in addition to the Rule 404(b) evidence discussed above, Scott had his possessions *on his person* at the time he was assaulted and that he realized his possessions were missing when he regained consciousness in the road after the assault. Unlike the victim's purse in *Moore* which was left in an unlocked and unattended store for forty minutes, the facts here, in the light most favorable to the State, tended to show that Scott and his attackers had direct access to the missing property during the relevant timeframe.

The Court of Appeals embraced defendant's argument that a thieving passerby or another individual unconnected with the assault might have robbed Scott while he lay in the road or sometime thereafter. The court stated that "[d]uring the period Scott laid unconscious, anyone in the vicinity could have happened upon him and

opportunistically seized his possessions from his person." *Perry*, 2024 WL 687053, at *4. But appellate courts may not assume the function of the jury, and the State's evidence may survive a motion to dismiss "even when [it] does not rule out every hypothesis of innocence." *Tirado*, 358 N.C. at 582 (cleaned up).

Moreover, like the "continuous chain of events" in *Baker*, 338 N.C. at 561, Scott indicated that his possessions were missing when he woke up in the road after he was assaulted by defendant with the intent to rob him. Defendant's argument that someone else might have passed by and robbed Scott while he lay unconscious, although perhaps a proper jury argument, cannot discount or otherwise take away from the evidence presented by the State.[3] We emphasize that the evidence at this stage need not convince the judge beyond a reasonable doubt; rather, evidence need only allow for a "reasonable inference of the defendant's guilt." *Powell*, 299 N.C. at 99 (emphasis omitted). Taken as whole, the State presented enough evidence to infer that the assault and robbery were part of a "continuous chain of events." *See Baker*, 338 N.C. at 561.

We also note that it is a defendant's burden to present evidence identifying an

---

[3] The dissent makes the same mistake as the Court of Appeals panel below by failing to evaluate the State's evidence as a whole. Both made rigid, mechanical comparisons to *Moore* and *Baker* while ignoring the totality of the State's evidence. Compounding this error, the dissent entirely disregards the well-established rule that the State's evidence need not "rule out every hypothesis of innocence." *Tirado*, 358 N.C. at 582 (cleaned up). While the dissent is correct that Scott was "vulnerable to the public" when he was unconscious in the road, the State is not required to exclude the possibility of alternative perpetrators at the motion to dismiss stage. Rather, the State need only present enough evidence to allow for a reasonable inference of defendant's guilt.

alternative perpetrator. Indeed, evidence proffered to show that someone other than the defendant committed the crime charged must "point directly to the guilt of some *specific* person." *State v. Abbitt*, 385 N.C. 28, 41 (2023) (emphasis added) (quoting *State v. McNeill*, 326 N.C. 712, 721 (1990)). Defendant cannot succeed on a motion to dismiss by speculating simply that "it could have been someone else."

At bottom, the Court of Appeals' analysis overlooked the dispositive inquiry on a motion to dismiss, i.e., whether the State presented more than a scintilla of evidence to support a reasonable inference of defendant's guilt. At this stage, the State's evidence must be considered as a whole. The Court of Appeals, relying on rigid comparisons to distinguishable fact patterns in our prior cases failed apply the proper standard. Because the State presented more than a scintilla of evidence, or the amount necessary to persuade a rational juror to accept a conclusion, the motion to dismiss was properly denied.

## III. Conclusion

On a motion to dismiss, we are mindful that the court "is concerned only with the sufficiency of the evidence to carry the case to the jury and not with its weight." *Powell*, 299 N.C. at 99. It is for the jury to serve as the ultimate arbiters of guilt, and a court should dismiss a charge only when the evidence is so lacking that no "reasonable inference of the defendant's guilt of the crime charged may be drawn from the evidence." *Id.* (emphasis omitted).

Here, considering the evidence as a whole and affording the State the benefit

of all reasonable inferences, the State presented sufficient evidence that defendant, or someone acting in concert with defendant, took Scott's property. We reverse the judgment of the Court of Appeals.

REVERSED.

Justice RIGGS dissenting.

I disagree with the majority's holding that the State's evidence suggesting that Mr. Perry took Mr. Scott's property was sufficient for the charge of robbery with a dangerous weapon to be submitted to the jury. For that reason and because I believe this Court must step carefully to ensure that it does not render an important legal process—a motion to dismiss the State's charges for insufficiency of the evidence—essentially pointless, I respectfully dissent.

## I.    Factual Background

On 18 May 2021, Damon Scott was invited to Shenika Lynch's apartment. The time at which he arrived at the apartment was not clear from trial testimony. During trial, Mr. Scott testified that he arrived around 8:00 p.m.; however, in an interview conducted by a detective about a month after the incident, Mr. Scott stated that he arrived around 11:00 p.m. to 12:00 a.m.[1] He arrived carrying his cell phone, house key, and around $250 in cash. Shortly after arriving, Mr. Scott was struck by defendant, Demarlo Perry, and stomped by Mr. Perry and other individuals in the apartment. Mr. Scott testified that the assailants "knocked [him] out and . . . threw

---

[1] To provide a fuller picture of what evidence was presented at trial, I am including instances in the testimony where Mr. Scott's direct testimony at trial conflicts with the statements he made during the interview he gave to Detective John Cramer on 30 June 2021. Of course, for the purpose of a motion to dismiss, "[t]he trial court does not weigh the evidence, consider evidence unfavorable to the State, or determine any witness' credibility." *State v. Parker*, 354 N.C. 268, 278 (2001) (citing *State v. Lucas*, 353 N.C. 568, 581 (2001)).

[him] out in the road."

At some point Mr. Scott lost consciousness, but the record is not clear about when this occurred. Mr. Scott testified that the last thing he recalled before passing out was being left in the middle of the road; however, he also testified that he did not know how he got outside. No evidence was presented regarding how long Mr. Scott was lying in the road. When he eventually came to, Mr. Scott flagged down a passerby to ask for a ride home. Once at home, Mr. Scott spoke with his niece and then slept, but later that night, he was taken to the hospital where his injuries required him to stay for an extended period of time.

The timeline is not clear about when Mr. Scott discovered he was no longer in possession of his phone, house key, and cash. At trial, Mr. Scott testified that he realized that his items were missing when he arrived at the hospital. Notwithstanding Mr. Scott's direct trial testimony, a detective testified that Mr. Scott told him in an interview that he noticed he was missing his possessions when he woke up in the road.

Mr. Perry was indicted for multiple charges including, among others, robbery with a dangerous weapon and assault with a deadly weapon inflicting serious injury. During the trial, the trial court allowed the State to introduce evidence of Mr. Perry's prior participation in a 2012 robbery where Mr. Perry struck the victim with a handgun and took the victim's wallet. The trial court allowed the evidence under Rule 404(b) for the purpose of showing that Mr. Perry had the intent to commit

robbery with a dangerous weapon or that the crime was a part of a common plan. Mr. Perry moved twice to dismiss the robbery with a dangerous weapon charge, and the trial court denied the motions each time.

## II.    Standard of Review

As a threshold matter, I take this opportunity to address the State's burden and how that burden is articulated by the majority. While the bar may be low for the State to survive a motion to dismiss, it cannot be the case that a motion to dismiss for insufficiency of the evidence is a functionally pointless motion, particularly in a case such as this.[2] To survive a motion to dismiss, the State must present substantial evidence of each of the essential elements of the offense charged and that the defendant is the perpetrator of the offense. *State v. Golder*, 374 N.C. 238, 249 (2020). The test for sufficiency of the evidence is the same whether the State provides direct evidence or circumstantial evidence. *State v. Barnes*, 334 N.C. 67, 75 (1993). For circumstantial evidence, the trial court must decide whether a reasonable inference of the defendant's guilt may be drawn from the circumstances. *Id*. If the evidence is only sufficient to raise a suspicion or conjecture as to either the commission of the offense or the identity of the perpetrator, then the motion to dismiss should be allowed. *State v. Powell*, 299 N.C. 95, 98 (1980); *see also State v. Campbell*, 373 N.C.

---

[2] Here, the State has failed to present any evidence of a timeline that supports a *reasonable* inference, beyond mere speculation, that Mr. Perry could have been the perpetrator of a theft. The rule emerging from this case is one that could, I fear, lull the State into complacency in carrying its burden, relieving the government of the burden of providing sufficient timeline evidence to support the charges it brings.

216, 221 (2019) ("Under well-settled caselaw, evidence of a defendant's mere opportunity to commit a crime is not sufficient to send the charge to the jury."). In contrast, if the record developed at trial contains substantial evidence, whether direct or circumstantial or both, to support a finding that the offense charged has been committed and that the defendant committed it, then the case is for the jury and the motion to dismiss should be denied. *Golder*, 374 N.C. at 250. "When reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the State, resolving all conflicts in the evidence in favor of the State and giving it the benefit of all *reasonable* inferences." *State v. Tirado*, 358 N.C. 551, 582 (2004) (emphasis added).

Courts evaluate whether the State has carried its burden by utilizing the above rules in what our courts have called the "substantial evidence" test or the "more than a scintilla of evidence" test, and our precedent states these are the same. *See, e.g.*, *State v. Weinstein*, 224 N.C. 645, 648 (1944) ("The rule is that the motion for judgment of nonsuit must be denied if there be any substantial evidence—more than a scintilla—to prove the allegations of the bill."); *Powell*, 299 N.C. at 99 ("The terms 'more than a scintilla of evidence' and 'substantial evidence' are in reality the same . . . ."); *State v. Smith*, 40 N.C. App. 72, 78 (1979) (providing an overview of how the test has been articulated by this Court and concluding, "To this day, it appears that the 'more than a scintilla of evidence' test and the 'substantial evidence' test are in reality only one test which is most frequently designated the 'substantial evidence

test' "). *But see State v. Agnew*, 294 N.C. 382, 396 (1978) (Exum, J., dissenting) (asserting that "more than a scintilla of evidence" is not the true test, rather, the test is whether there is "substantial evidence—direct, circumstantial, or both—to support a finding that the offense charged has been committed and that the accused committed it" (quoting *State v. Stewart*, 292 N.C. 219, 224 (1977))).

Yet even with precedent asserting that these articulations of the test are one and the same, in application the focus on a "scintilla," as the majority employs in this case, has the potential to effectively obviate any work that a court may ever do to hold the State to any standard of sufficiency of the evidence on a motion to dismiss. That would be wrong in both a practical and a precedential sense. For example, in *Powell*, this Court elaborated on those terms and announced that "the evidence must be existing and real, not just seeming or imaginary." 299 N.C. at 99. Further, this Court has stated that "[s]ubstantial evidence is that amount of relevant evidence necessary to persuade a rational juror to accept a conclusion." *State v. Mann*, 355 N.C. 294, 301 (2002) (citing *State v. Frogge*, 351 N.C. 576, 584 (2000)). A motion to dismiss for insufficient evidence is an important procedural tool that serves as a safeguard against unfounded charges reaching the jury leading to potentially unwarranted convictions.[3] Therefore, it is important that this tool not lose all use.

---

[3] *See generally Thompson v. City of Louisville*, 362 U.S. 199, 206 (1960) (stating that "it [is] a violation of due process to convict and punish a man without evidence of his guilt"); *Harris v. United States*, 404 U.S. 1232, 1233 (1971) ("It is beyond question, of course, that a conviction based on a record lacking any relevant evidence as to a crucial element of the offense charged would violate due process."); Carrie Leonetti, *When the Emperor Has No*

### III. The State failed to present sufficient evidence of the robbery with a dangerous weapon charge.

Returning to the matter at hand, I would hold that the State failed to present sufficient evidence of the robbery with a dangerous weapon charge. Based on the evidence presented, the State only established that Mr. Perry had the opportunity to commit the offense and did not present sufficient evidence for a rational juror to infer that it was Mr. Perry that took Mr. Scott's property rather than anyone else in the area that had access to Mr. Scott that night.

The elements of robbery with a dangerous weapon are: "(1) the unlawful taking or an attempt to take personal property from the person or in the presence of another (2) by use of a firearm or other dangerous weapon (3) whereby the life of a person is endangered or threatened." *State v. Small*, 328 N.C. 175, 181 (1991) (quoting *State v. Beaty*, 306 N.C. 491, 496 (1982)); *see also* N.C.G.S. § 14-87(a) (2025). "Force or intimidation occasioned by the use or threatened use of firearms[ ] is the main element of the offense." *Small*, 328 N.C. at 181 (quoting *Beaty*, 306 N.C. at 496).

The majority asserts that the Court of Appeals erred in holding that this case was more similar to the facts of *State v. Moore*, 312 N.C. 607 (1985), than *State v. Baker*, 338 N.C. 526 (1994). And the majority relies heavily on the rule that

---

*Clothes: a Proposal for Defensive Summary Judgment in Criminal Cases*, 84 S. Cal. L. Rev. 661, 711 (2011) (discussing mechanisms for summary dispositions of criminal charges including the motion to dismiss and observing that "[p]ermitting a weak or even frivolous prosecution case to proceed to trial and verdict unnecessarily risks having some juries convict despite the paucity of evidence of guilt").

"[c]ontradictions and discrepancies must be resolved in favor of the State." *See State v. Stone*, 323 N.C. 447, 452 (1988) (quoting *State v. Bullard*, 312 N.C. 129, 160 (1984)). I disagree with the majority's analysis and would hold that the Court of Appeals applied our precedent correctly.

In *Moore*, the defendant was convicted of robbery with a dangerous weapon based upon a sexual assault at knifepoint when the victim was working alone in a store. 312 N.C. at 608–09. After the assault, the victim left the store to seek help and left the back door unlocked. *Id.* at 609–10. The victim only discovered that her wallet was missing from her purse when she returned. *Id.* at 610. Around two hours elapsed between the time of the attack and the time when the victim noticed her wallet was missing and approximately forty to forty-five minutes passed from the time the victim left the store until police arrived. *Id.* at 610, 612. The Court concluded that the evidence proved that the defendant had the opportunity to have taken the money but also proved that "[a]nyone in the vicinity . . . could have entered the store during this time and taken the wallet"; thus, the Court determined that the defendant's conviction of robbery with a dangerous weapon could not stand. *Id.* at 613.

And in *Baker*, the victim, also a shopkeeper like the victim in *Moore*, was seen outside the store being forcibly held by the defendant around thirty minutes before it was discovered that money had been taken from the cash register. 338 N.C. at 560. The Court determined that the evidence supported the inference that the abduction

and the taking were essentially "a continuous chain of events" and held that the motion to dismiss the robbery charge was properly denied. *Id.* at 561.

The majority concludes that this case is unlike *Moore*, where there was a minimum timeframe of at least forty minutes when the store was unattended, and more like *Baker*, "a continuous chain of events," because the State's evidence "tended to show that [Mr.] Scott and his attackers had direct access to the missing property during the relevant timeframe." But that conclusion disregards the fact that the State failed to present *any* evidence of a reasonably short timeframe like the circumstances of *Baker*. Even viewing the evidence in the light most favorable to the State and accepting as true that Mr. Scott realized he was missing his possessions when he woke up in the road and not at the hospital, there is still an indeterminate amount of time that Mr. Scott was lying out in the road before waking up and getting a ride home. This was not a continuous chain of events like in *Baker*. Rather, while Mr. Scott was unconscious, he was vulnerable to the general public in addition to Mr. Perry or the other assailants. Therefore, likening the sufficiency of the evidence in this case to the sufficiency of the evidence presented in *Moore*, the Court of Appeals correctly held that the evidence presented by the State proved nothing more than the fact that Mr. Perry had the opportunity to take the property from Mr. Scott. And as this Court has determined, "evidence of a defendant's mere opportunity to commit a crime is not sufficient to send the charge to the jury." *Campbell*, 373 N.C. at 221.

And while the State may have presented evidence of Mr. Perry's prior similar offense to support an inference of Mr. Perry's intent, that evidence does not transform the State's evidence from showing a "mere opportunity" into a "reasonable inference" that he was, in fact, the perpetrator. *See id.*; *Barnes*, 334 N.C. at 75; *see also* N.C.G.S. § 8C-1, Rule 404(b) (2025) ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith."). Specifically, this Court has held that evidence of opportunity and intent can be sufficient to show that a defendant was the perpetrator of a robbery *where evidence is also presented that suggests the defendant possessed the taken property. See, e.g., State v. Dover*, 381 N.C. 535, 548–51 (2022) (emphasis added) (holding that the evidence was sufficient to support the reasonable inference that the defendant was the perpetrator of a robbery where the evidence tended to show that the defendant had the opportunity to commit the offense, had prior financial struggles indicating a motive, and was in possession of a large amount of money after the victim's money was stolen); *see also, e.g., State v. Evans*, 279 N.C. 447, 452 (1971) (stating in dicta that "[p]roof of the defendant's presence in a place of business, his possession therein of a firearm and his intent to commit the offense of robbery is not sufficient to support a conviction of the offense described in G.S. 14-87, for it omits the essential elements of (1) a taking or attempt to take personal property, and (2) the endangering or threatening of the life of a person"). In this matter, no evidence

was presented creating an inference that Mr. Perry possessed Mr. Scott's property, thus the Rule 404(b) evidence does not tip the balance of this test in the State's favor.[4]

Additionally, this Court's holding in *State v. Murphy*, 225 N.C. 115 (1945), supports a conclusion that the State failed to present sufficient evidence of the robbery charge. In *Murphy*, the victim was assaulted while riding his bike home and was left unconscious in the street for an indeterminate amount of time. 225 N.C. at 115–16. Two women later moved the victim to a porch, and the victim woke up after around ten minutes and discovered that the money he had been carrying was missing. *Id.* at 116. The Court determined that "the evidence disclose[d] no more than an opportunity for the defendants to take the money" and also showed "an equal opportunity for others to have taken the money." *Id.* at 117. Therefore, the Court stated that "[u]nder such circumstances to find that any particular person took the money is to enter the realm of speculation" and held that the State did not present sufficient evidence to sustain the robbery charge against the defendants. *Id.* The same result must follow here.

Finally, I wish to clarify the majority's assertion that "it is a *defendant's* burden to present evidence identifying an alternative perpetrator." While I agree that our

---

[4] To be clear, we are not arguing that possession of the stolen property is a required element of robbery with a dangerous weapon. However, in cases where the State's evidence was weak, like it is here, our Court has treated possession as significant. Our point is to emphasize how the State's 404(b) intent evidence and the lacking timeline evidence (supporting that Mr. Perry had more than the "mere opportunity" to be the perpetrator) are not enough for the State to survive a motion to dismiss.

caselaw states that "[w]here evidence 'is proffered to show that someone other than the defendant committed the crime charged, admission of the evidence must do more than create mere conjecture of another's guilt in order to be relevant,' " *State v. Abbitt*, 385 N.C. 28, 40 (2023) (quoting *State v. McNeill*, 326 N.C. 712, 721 (1990)), that legal statement is irrelevant to the case at hand. Mr. Perry's argument is simply that the State failed to present sufficient evidence to create a timeline narrow enough to support a reasonable inference that Mr. Perry had more than just an opportunity to be the perpetrator of this offense.

The State bears the burden of presenting sufficient evidence and, unless we implicitly overrule *Moore* and *Murphy*, the State had the burden here to establish a timeline tight enough to make reasonable for a jury the inference that it was Mr. Perry, and not someone else, who committed the crime. The State could have elicited testimony from the passerby who gave Mr. Scott a ride home, from his niece who he chatted with once he arrived at home, or from hospital staff.[5] If the State had done so, my position in this matter may have been different because evidence that

---

[5] The trial transcripts demonstrate the State called several witnesses who, at least in theory, could have provided timeline evidence that answered the reasonableness question, including Mr. Scott; Dr. MacNeill, an emergency medicine physician who treated Mr. Scott when he went to the hospital for his injuries during the night of the incident; Dr. Korn, a plastic surgeon who Mr. Scott was referred to on that night or shortly thereafter; and Detective John Cramer, the police investigator assigned to the case who interviewed Mr. Scott. The passerby that gave Mr. Scott a ride and Mr. Scott's niece were not called as witnesses. The State failed to elicit *any* testimony—that parties in this matter could have likely provided—clarifying the duration of time between the assault occurring and Mr. Scott noticing his possessions were missing.

narrowed the timeline on opportunity would affect the reasonableness of the inference jurors were asked to make. But as it stands, I would hold that the State failed to carry its burden.

Accordingly, on these facts, the State has failed to meet its burden to show that Mr. Perry was the perpetrator of the robbery offense and the Court of Appeals did not err in vacating Mr. Perry's conviction of robbery with a dangerous weapon. Therefore, I respectfully dissent.

Justice EARLS joins in this dissenting opinion.